IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| DANIEL ESPIE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:14cv6-MHT |
| | ) | (WO) |
| WASHINGTON NATIONAL | ) | |
| INSURANCE COMPANY, a | ) | |
| Corporation; and CAINE & | ) | |
| WEINER COMPANY, LLC, a | ) | |
| Corporation, | ) | |
| | ) | |
|     Defendants. | ) | |


OPINION AND ORDER

Plaintiff Daniel Espie brought this action against

defendants Washington National Insurance Company and

Caine & Weiner Company, LLC, asserting state-law claims

of breach of contract and fraud. Subject-matter

jurisdiction is proper under 28 U.S.C. § 1332

(diversity).

The case is now before this court on the defendants'

motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(3)

or transfer pursuant to 28 U.S.C. § 1404(a), based on a

forum-selection clause.  The court finds that the clause applies to the claims in this case, but those motions will nonetheless be denied.  However, Washington National raised an additional basis for dismissal, the doctrine of forum non conveniens, in a footnote in its reply brief.  The court will therefore treat the reply brief as a separate motion to dismiss, and will give Caine & Weiner an opportunity to join and Espie an opportunity to respond.

## I. LEGAL STANDARD

In considering a defendant's motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), the court accepts the plaintiff's allegations as true "only 'to the extent they are uncontroverted by defendant['s] affidavits.'"  Estate of Myhra v. Royal Caribbean Cruises, Ltd., 695 F.3d 1233, 1239 (11th Cir. 2012) (quoting Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990)).  "Rule 12(b)(3) is a

somewhat unique context of dismissal in which [courts] consciously look beyond the mere allegations of a complaint, and, although [courts] continue to favor the plaintiff's facts in the context of any actual evidentiary dispute, [courts] do not view the allegations of the complaint as the exclusive basis for decision." Id.

In considering a defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), the court has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988); it must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal quotation marks omitted); see also C.M.B. Foods, Inc. v. Corral of Middle Georgia, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (Thompson, J.).

## II. BACKGROUND

Plaintiff Daniel Espie is an insurance agent.  During the relevant time period, he worked as a regional manager for a company which, in turn, acted as an independent marketing organization for defendant Washington National Insurance Company.

Espie and Washington National entered into a "Sales Representative Agreement."   See Affidavit of Christy Wilson (Doc. No. 6-1) at 9-19.[1]  That agreement authorized Espie to sell Washington National insurance and set forth the terms of that relationship.   It also contained a

_____

1. The documents submitted by the defendants in this case indicate that "Conseco Marketing, L.L.C.," rather than Washington National, was the party that contracted with Espie.   The relationship between Conseco and Washington National is not obvious from the record in this case.   See Affidavit of Christy Wilson (Doc. No. 6-1) at 20 (mentioning Conseco and Washington National in correspondence to Espie).   However, from both sides' filings it is clear that the relevant contracts constitute agreements between Espie and Washington National, and that there is no dispute on this point.  See id. at 2 (attesting that attached document is "the controlling contract between Washington National and Plaintiff Daniel Espie"); Letter Dated July 31, 2013 (Doc. No. 1-1) (referencing agreement between Washington National and Espie).

4

forum-selection clause: "Each party agrees to the exclusive jurisdiction of the courts of Hamilton County, Indiana, with respect to any claim or cause of action, whether in law or in equity, including specific performance, arising under or relating to this agreement...." Id. at 16.

Espie and Washington National also entered into a separate "Advance Compensation Agreement." See id. at 5-7; see also id. at 14-15 (Sales Representative Agreement addressing advance compensation). The Advance Compensation Agreement provided that, when Espie sold an insurance policy to a customer, Washington National would pay Espie's commission in advance, before the company had collected premiums from the customer. It also provided that, should the insurance policies Espie had sold lapse or be terminated before Washington National had recovered the sum advanced to Espie, or should Washington National's agreement with Espie be terminated, then Espie

would owe Washington National the outstanding sum that had been advanced to him.

The Advance Compensation agreement explicitly indicated Espie's desire to "modify" the Sales Representative Agreement "in order to permit [him] to receive compensation in advance of premiums being collected" by Washington National. Id. at 5. However, it provided that, other than specific modifications it made, "[a]ll the terms, conditions and definitions of the [Sales Representative Agreement] ... shall remain in force and effect..." Id. at 7. The unmodified terms remaining in effect therefore included the forum-selection clause. Because the Advance Compensation Agreement modified some terms of the Sales Representative Agreement, but reaffirmed all others including the forum-selection clause, the court will treat the two as a single contract for the purposes of this opinion. When the court refers to the "Sales Representative Agreement" in the remainder of this opinion, it is referring that

agreement as modified by the Advance Compensation Agreement.

Under this advance-compensation agreement, Espie came to owe Washington National $ 29,019.04 in the form of previously advanced commissions, referred to as "charge-backs." Complaint (Doc. No. 1) at ¶ 7. Washington National retained defendant Caine & Weiner Company, LLC, to collect the debt owed by Espie.

Espie negotiated with Caine & Weiner, ultimately reaching an agreement regarding the outstanding debt. Under that agreement, which was memorialized in a letter Caine & Weiner sent to Espie dated July 31, 2013, Espie would pay $ 10,250.00 immediately and $100 per month thereafter until the debt was satisfied. <u>See</u> Letter Dated July 31, 2013 (Doc. No. 1-1).

In exchange, Caine & Weiner represented that Washington National would not report Espie's debt to VectorOne. <u>See</u> <u>id</u>.; Complaint (Doc. No. 1) at ¶ 11. VectorOne, or Vector, is a computer service which

7

includes information about debts that insurance agents owe to insurance companies. According to the complaint, insurance companies rely on that information when deciding whether to contract with particular agents. Caine & Weiner also represented that Espie's debt would not be made part of Espie's credit report. See Letter Dated July 31, 2013 (Doc. No. 1-1). The letter does not include any forum-selection clause.

Espie paid as he had agreed. However, he alleges, the defendants breached the agreement by reporting his debt to VectorOne as well as two consumer credit reporting agencies. As a result, his contract with one insurance company was cancelled, and the terms of his contract with another company were adversely modified.

Espie then brought this suit, asserting six state-law claims: one count of breach of contract, and five counts of various kinds of fraud. The basic assertions underlying all six counts are the same: that the

defendants promised not to report Espie's debts, but did so anyway.

The defendants moved to dismiss, arguing that the forum-selection clause of the Sales Representative Agreement requires that this case be heard in Indiana. After Espie amended his complaint, the defendants renewed their motions on this same basis.[2]

### III. DISCUSSION

### A. Scope of the Forum-Selection Clause

The threshold issue is whether the forum-selection clause applies to Espie's claims at all. The clause provides: "Each party agrees to the exclusive jurisdiction of the courts of Hamilton County, Indiana, with respect to any claim or cause of action, whether in law or in equity, including specific performance, arising

_____

2. Caine & Weiner, but not Washington National, also moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  It made no substantial argument in support.  That motion will be denied.

under or relating to this agreement..." Affidavit of Christy Wilson (Doc. No. 6-1) at 16.

The defendants argue that Espie's claims clearly 'relate to' the Sales Representative Agreement and therefore fall within the scope of the forum-selection clause. After all, the claims in this case all essentially amount to the assertion that the defendants failed to live up to their side of the agreement to settle Espie's debt, and it is clear that the debt itself was incurred during the course of Espie's work as an insurance agent pursuant to the Sales Representative Agreement. Espie, on the other hand, argues that the defendants breached not the Sales Representative Agreement but a <u>different</u> contract, namely the July 31, 2013, letter settling his outstanding debt. Because <u>that</u> letter contract contains no forum-selection clause, he argues that he is free to bring his case in this court.

If the court were to read the forum-selection clause literally, then the defendants would be clearly correct.

The Sales Representative Agreement provides for exclusive Indiana jurisdiction for any claim "relating to this agreement."   Affidavit of Christy Wilson (Doc. No. 6-1) at 16.   As the Eleventh Circuit Court of Appeals has observed, in the broadest sense everything is 'related': "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, it would have no limiting purpose because really, universally, relations stop nowhere."   Bailey v. ERG Enterprises, LP, 705 F.3d 1311, 1318 (11th Cir. 2013) (quoting Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011)) (internal quotation marks omitted, alteration in original).   Thus, the term 'related to' in forum-selection clauses (or in their cousins, arbitration clauses) is not read literally.[3]

Instead, in the Eleventh Circuit, "A claim 'relates to' a contract when 'the dispute occurs as a fairly

_____

3. In interpreting forum-selection clauses, the Eleventh Circuit has relied heavily on cases interpreting arbitration clauses.   See Bailey, 705 F.3d at 1317-18. This court will do likewise.

11

direct result of the performance of contractual duties.'" Id. at 1217 (quoting Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001)). In other words, in place of its literal meaning, the phrase 'related to' as interpreted in the Eleventh Circuit "marks a boundary indicating some direct relationship." Id. at 1317-18 (internal quotation marks omitted).

As such, the defendants' argument, that the claims here are obviously 'related' to the Sales Representative Agreement in the literal sense, is unpersuasive. Indeed, the Eleventh Circuit has repeatedly rejected the application of forum-selection and arbitration clauses containing similar language despite a clear relationship between the claim and the contract. In Int'l Underwriters AG v. Triple I: Int'l Invs., Inc., for example, the court was confronted with two contracts: one of the contracts contained a clause requiring arbitration for any dispute "in any way related to" that contract, while the plaintiff alleged a breach of the other

contract.  533 F.3d 1342, 1344 (11th Cir. 2008).  The court noted the "obvious relationship between the two contracts" at issue in that case.  Id. at 1349. Nonetheless, despite the clear relationship, the court refused to find that allegation of breach of one contract fell within the arbitration clause of other.

But Espie's argument, that the fact that he is suing under a different contract than the one which contains the forum-selection clause means the clause does not apply, is equally simplistic and unpersuasive.[4]  For, in other cases, the Eleventh Circuit has found that forum-selection and arbitration clauses do apply even though

_____

4. In his brief, Espie also appears to argue that the July 31, 2013, letter created a contract not with Washington National but with Caine & Weiner.  To the extent that he makes it, this argument fails because Caine & Weiner entered into the July 31 agreement on behalf of Washington National.  See Letter Dated July 31, 2013 (Doc. No. 1-1) ("Caine & Weiner, represents Washington National Insurance, both fully and legally in regards to this matter."); Complaint (Doc. No. 1) at ¶ 8 (Washington National "hired or otherwise retained [Caine & Weiner] to collect the amount of the allegedly owed commission charge-backs from Plaintiff"); Affidavit of Christy Wilson (Doc. No. 6-1) at 23-39 (collection-agency contract).

the cause of action at issue is based on something other than the contract which contains the clause.  In <u>Slater v. Energy Servs. Grp. Int'l, Inc.</u>, for example, the court rejected the plaintiff's argument that the forum-selection clause, which applied to claims relating to her employment contract, "should be read to encompass only breach-of-contract claims directly relating to the employment agreement," and not the plaintiff's statutory claims.  634 F.3d 1326, 1330-31 (11th Cir. 2011).[5] And in <u>Doe</u>, the court found that the scope of the arbitration clause, which also applied to any claims relating to the plaintiff's employment contract, was broad enough to include her claims under federal statutory law, admiralty law, and traditional maritime law, all of which relied on her status as a seaman, but not broad enough to include her common-law tort claims, which did not.  657 F.3d at 1219-21.

---

5. As discussed below, <u>Slater</u> has been abrogated in part on other grounds by <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas</u>, 134 S. Ct. 568, 577 (2013).

14

The parties have cited no case directly addressing the instant situation, in which the claims relate most directly to a subsequent agreement settling a debt that in turn arose under a prior contract containing a forum-selection clause. Thus, on the question of whether Espie's claims fall within the scope of the forum-selection clause, "The case law yields no clear answer." Telecom Italia, 248 F.3d at 1114. The cases do, however, provide guidance. Several factors which the Eleventh Circuit has emphasized in prior cases all point to the conclusion that the claims in this case are encompassed in the forum-selection clause.

One critical factor to consider is "whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." Id. at 1116. In this case, it was foreseeable at the time Espie signed the Sales Representative Agreement that he might, as a result of advance payments made to him under the contract, end up owing money to Washington National. It

15

was also foreseeable that he might reach some settlement with regard to that debt, and that Washington National might breach that settlement. The foreseeability of the instant situation suggests that these claims do 'relate to' the original contract, as that term has been interpreted in the Eleventh Circuit.

This conclusion is bolstered by examination of another factor that the Eleventh Circuit has considered important: the extent to which the claim is 'independent' of the contract. When the claim in a case would be viable even if the contract containing the clause had never existed, the court has indicated that independence is an important factor suggesting that the claim does not 'relate to' the contract. See, e.g., Telecom Italia, 248 F.3d at 1116 (alleged tortious interference could have taken place "even if TMI had no contractual relationship with WTC"); Doe, 657 F.3d at 1219 ("The cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with

Doe."); <u>Triple I</u>, 533 F.3d at 1347 ("Triple I's claims could have arisen even in the absence of any escrow agreement.").

Similarly, when a claim would be viable even if all parties had performed satisfactorily under the contract, that suggests the claim does not 'relate to' the contract.  <u>See, e.g.</u>, <u>Bailey</u>, 705 F.3d at 1318 ("the Buyers would still be able to bring their ... fraud claims even if Ginn-LA had performed all of its obligations under the ... contracts"); <u>Doe</u>, 657, F.3d at 1219-20 ("The parties could each have fulfilled all of their duties under the crew agreement and Doe could have perfectly performed her services for the cruise line, and the parties still be embroiled in the dispute alleged in Doe's common law claims..."); <u>Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments</u>, 553 F.3d 1351, 1368-69 (11th Cir. 2008) ("The parties could have 'performed the arbitrable contract perfectly, fulfilling all expectations under that contract,' and still be

17

embroiled in this dispute.") (quoting <u>Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382, 385 (11th Cir. 1996)).

Thus, it is clear that the fact that a claim could exist in the absence of the contract (or in the absence of failure to perform under the contract) is important to the determination of whether the claim 'relates to' the contract. However, the Eleventh Circuit has rejected the argument that "a but-for relationship" between the contract and the claims necessarily means "the claims 'relate to' the contract." <u>Bahamas Sales Assoc., LLC v. Byers</u>, 701 F.3d 1335, 1341 (11th Cir. 2012) (quoting <u>Triple I</u>, 533 F.3d at 1347). In other words, the fact that a claim would not exist but for the contract (or but for failure to perform under the contract) does not <u>establish</u> that the claim 'relates to' the contract.

Nonetheless, it is clear from the court's analysis in the above-cited cases that a but-for relationship is <u>relevant</u>. In each of those cases, the fact that the claim would be viable even without any contractual

18

relationship at all (or without any failure to perform fully under the contract) was critical to the court's finding that the claim did not 'relate to' the contract. If the lack of a but-for relationship is a critical consideration, then the existence of a but-for relationship also bears on the analysis, suggesting that the claim <u>does</u> 'relate to' the contract.

In this case, there is a clear but-for relationship. If there had been no contract, there would be no debt. If there were no debt, there would be no promise to refrain from reporting the debt (and, indeed, there would be nothing to report). Similarly, if all parties had performed fully under the original contract, then there would remain no outstanding debt to be settled with a later agreement. In other words, but for the Sales Representative Agreement, and but for the failure to fully perform under the Sales Representative Agreement, there would be no claims in this case. This is another

19

factor that weighs in favor of finding the clause applicable to these claims.

Finally, the Eleventh Circuit has indicated that a claim is more likely to be 'related to' a contract when that contract is "the central document in the parties' relationship." Triple I, 533 F.3d at 1347.  In Triple I, there were two contracts: one which established the terms of $ 10.4 million deal to issue bonds, and a second which arranged for the first payment to be made via an escrow agent.   The escrow contract included an arbitration clause, but the main bond contract did not.  The claim was for breach of the bond contract.   The Eleventh Circuit found that this claim did not 'relate to' the escrow contract, and noted that "To hold otherwise would be to let the tail wag the dog."   Id. at 1346.   It distinguished Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005), abrogated in part on other grounds as recognized in Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1171 (11th Cir. 2011), because

in <u>Blinco</u> the arbitration clause had been part of "the central document in the parties' relationship."   <u>Triple I</u>, 533 F.3d at 1347.

In this case, "the central document in the parties' relationship," <u>id</u>., is the Sales Representative Agreement.   Like the escrow contract at issue in <u>Triple I</u>, the subsequent agreement memorialized in the July 31, 2013, letter is an addendum to that relationship.   However, unlike <u>Triple I</u>, in this case the forum-selection clause is found in the central document, not the addendum.   As such, a finding that Espie's claims 'relate to' the Sales Representative Agreement will not result in the 'tail wagging the dog'.

In sum, then, the court finds that the claims at issue in this case do fall within the scope of the forum-selection clause.   Furthermore, because that clause provides for "exclusive jurisdiction" in another forum, Affidavit of Christy Wilson (Doc. No. 6-1) at 16, the court finds that the clause is mandatory rather than

permissive.   Global Satellite Commc'n Co. v. Starmill
U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) ("A
mandatory clause ... 'dictates an exclusive forum for
litigation under the contract.'") (quoting Snapper, Inc.
v. Redan, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)).


### B. Enforcement Procedure

Given that the clause applies to these claims, the
court must determine the proper procedural means to
enforce it.  The defendants seek dismissal pursuant to
Fed. R. Civ. P. 12(b)(3) or, in the alternative, transfer
to the Southern District of Indiana, Indianapolis
Division pursuant to 28 U.S.C. § 1404(a).  In its reply
brief, Washington National also seeks dismissal under the
doctrine of forum non conveniens.


### i. Motion to Dismiss - Rule 12(b)(3)

There is Eleventh Circuit authority that a court may
grant a motion to dismiss under Rule 12(b)(3) for

22

improper venue in order to enforce a valid forum-selection clause.  See Slater, 634 F.3d at 1332-33; Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998).  However, the Supreme Court has recently rejected this approach, clarifying that such a motion may be granted only if "venue is 'wrong' or 'improper'" under the relevant statute, generally 28 U.S.C. § 1391(b).  Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 577 (2013).  "Whether the parties entered into a contract containing a forum-selection clause has no bearing" on the analysis under § 1391(b), and so "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." Id. at 577-8.  The defendants have made no argument in this case that venue is improper under § 1391(b), and the court concludes venue is proper based on Espie's residence. See 28 U.S.C. § 1391(b)(2).  Therefore, the motion to dismiss under Rule 12(b)(3) will be denied.

## ii.   Motion to Transfer

In <u>Atlantic Marine</u> the Supreme Court went on to address the proper methods for enforcing forum-selection clauses.   The Court found that such clauses may be properly enforced by a transfer to another federal district court pursuant to 28 U.S.C. § 1404(a), and the defendants in this case have moved for a transfer to the Southern District of Indiana based on that provision. Section 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."   In <u>Atlantic Marine</u>, the Court indicated a strong preference for such transfer when there is a valid forum-selection clause.   134 S.Ct. at 581.

However, the forum-selection clause in this case does not provide a basis for transfer to Southern District of Indiana, Indianapolis Division, or to any other federal

district court.   The forum-selection clause calls for
"the exclusive jurisdiction of the courts of Hamilton
County, Indiana."   <u>See</u> Affidavit of Christy Wilson (Doc.
No. 6-1) at 16.   In interpreting a similar clause, the
Eleventh Circuit found that, because it did not specify
the state courts of a particular county, a suit in either
the state or federal courts <u>located in that county</u> would
satisfy the clause.   <u>Global Satellite Commc'n Co. v.</u>
<u>Starmill U.K. Ltd.</u>, 378 F.3d 1269, 1272 (11th Cir. 2004)
("a suit either in the Seventeenth Judicial District of
Florida, or in the Fort Lauderdale Division of the
Southern District of Florida, both of which are located
in Broward County, would satisfy the venue requirement").

Hamilton County does fall within <u>jurisdiction</u> of the
Southern District of Indiana, Indianapolis Division.   <u>See</u>
http://www.insd.uscourts.gov/content/indianapolis.   But
the federal court itself is located in Indianapolis,
which is in Marion County.   <u>Id</u>.; http://www.indy.gov/.
The Eleventh Circuit has held in an unpublished opinion

that suit in a district court which has jurisdiction
over, but is not itself located in, the county specified
in a forum-selection clause does not comply with the
clause:

> "Under our clearly applicable reasoning
> in Global Satellite, because the only
> court situated in Suwannee County,
> Florida is the Circuit Court for the
> Third Judicial Circuit, the ... forum
> selection clause did in fact designate
> that court as the particular forum in
> which the parties must bring suit. By
> the same token, removal of the action to
> the United States District Court for the
> Middle District of Florida, Jacksonville
> Division, located outside of Suwannee
> County, Florida, would not satisfy the
> venue requirement."

Cornett v. Carrithers, 465 F. App'x 841, 843 (11th Cir.
2012); see also Millennium Med. Mgmt., LLC v. Ling Li,
2012 WL 1940112 at *2 (M.D. Fla. 2012) (Presnell, J.)
(following Cornett).

The court finds the reasoning of Cornett persuasive
and will follow it.[6]  Because there is no federal court

---

6. The wording of the clauses in these cases varies
somewhat.  In Global Satellite, the contract required
(continued...)

26

located in Hamilton County, a transfer to the Southern District of Indiana, Indianapolis Division (or any other federal court) would not comply with the forum-selection clause in this case. Therefore, the defendants' motions pursuant to 28 U.S.C. § 1404(a) will also be denied.

### iii.  Motion to Dismiss - Forum Non Conveniens

Thus, it is clear that the forum-selection clause designates a state court located in Hamilton County, Indiana.  The Supreme Court, in Atlantic Marine, addressed this situation as well: "the appropriate way to enforce a forum-selection clause pointing to a state ... forum is through the doctrine of forum non conveniens." 134 S.Ct. at 580.  The Court noted that "Section 1404(a)

---

6(...continued)
venue to be "'in Broward County.'"  378 F.3d at 1272.  In Cornett, the contract provided that "'the venue shall be Suwannee County.'"  465 F. App'x at 843.  In this case, the clause calls for venue in the "courts of Hamilton County, Indiana."   See Affidavit of Christy Wilson (Doc. No. 6-1) at 16.   This court does not discern any significance from the difference in wording that might undermine the applicability of Cornett.

27

is merely a codification of the doctrine of <u>forum non</u>
<u>conveniens</u> for the subset of cases in which the
transferee forum is within the federal court system" and
indicated that, for cases to which § 1404(a) does not
apply, "the residual doctrine of <u>forum non conveniens</u> has
continuing application in federal courts." <u>Id</u>. (internal
quotation marks omitted).

In this case, Washington National has moved for
dismissal under the doctrine of <u>forum non conveniens</u>.
"To obtain dismissal for <u>forum non conveniens</u>, '[t]he
moving party must demonstrate that (1) an adequate
alternative forum is available, (2) the public and
private factors weigh in favor of dismissal, and (3) the
plaintiff can reinstate his suit in the alternative forum
without undue inconvenience or prejudice.'" <u>GDG</u>
<u>Acquisitions, LLC v. Gov't of Belize</u>, 749 F.3d 1024, 1028
(11th Cir. 2014)(quoting <u>Leon v. Millon Air, Inc.</u>, 251
F.3d 1305, 1310-11 (11th Cir. 2001)).

As the Eleventh Circuit recently observed, <u>Atlantic</u> <u>Marine</u> made it clear that "an enforceable forum-selection clause carries near-determinative weight in this analysis." <u>GDG Acquisitions</u>, 749 F.3d at 1028. While <u>Atlantic Marine</u>'s discussion focused principally on motions to transfer under 28 U.S.C. § 1404(a), the Supreme Court noted that the analysis would be the same for a motion to dismiss under <u>forum non conveniens</u>. 134 S.Ct. at 580 ("courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum"). Thus, the Supreme Court's observations in <u>Atlantic Marine</u> regarding motions to transfer apply with equal force to the <u>forum non conveniens</u> analysis.

In discussing motions to transfer, the Supreme Court stated that, "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in

that clause." 134 S.Ct. at 581. "Only under
extraordinary circumstances unrelated to the convenience
of the parties should a § 1404(a) motion be denied."
Id.; see also id. ("'a valid forum-selection clause
[should be] given controlling weight in all but the most
exceptional cases'") (quoting Stewart Organization, Inc.
v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J.,
concurring) (alteration in original)). In particular,
where the parties have agreed to a valid forum-selection
clause, courts are instructed to give no weight to the
plaintiff's choice of forum and to ignore the parties'
private interests. Id. at 581-2. Furthermore, "the
plaintiff bears the burden of establishing that transfer
to the forum for which the parties bargained is
unwarranted." Id. at 581.

Applying these lessons to a motion under the doctrine
of forum non conveniens, the Eleventh Circuit found that
"A binding forum-selection clause requires the court to
find that the forum non conveniens private factors

30

entirely favor the selected forum." <u>GDG Acquisitions</u>,
749 F.3d at 1029. Therefore, if the court finds that a
forum-selection clause applies to the claims at issue (as
this court already has done in this case), "the district
court must find that the <u>forum non conveniens</u> private
factors unequivocally support the selected forum." <u>Id</u>.
"The <u>forum non conveniens</u> analysis should then proceed,
with the understanding that '[i]n all but the most
unusual cases ... the interest of justice is served by
holding parties to their bargain.'" <u>Id</u>. (quoting
<u>Atlantic Marine</u>, 134 S.Ct. at 583) (internal quotation
marks omitted).

However, these considerations principally bear on the
second prong of the Eleventh Circuit's <u>forum non
conveniens</u> analysis: "(2) the public and private factors
weigh in favor of dismissal." <u>GDG Acquisitions</u>, 749 F.3d
at 1028 (internal quotation marks omitted). In <u>GDG
Acquisitions</u>, the Eleventh Circuit was clear that, after
the court finds that the private factors support the

agreed-upon forum, the "analysis should then proceed" to the rest of the <u>forum non conveniens</u> test. <u>Id</u>. at 1029. But, in this case, Washington National has offered no argument or evidence regarding the first and third prongs of the <u>forum non conveniens</u> analysis: "(1) an adequate alternative forum is available ... and (3) the plaintiff can reinstate his suit in the alternative forum without undue ... prejudice." <u>Id</u>. at 1028.  Indeed, far from establishing that the Hamilton County, Indiana, state courts offer an adequate alternative and that Espie can, in fact, reinstate his case there, the defendants in this case have not even mentioned those courts (indicating instead a preference for the Indiana federal district court).

Ordinarily, while the "burden of demonstrating that an appropriate alternative forum exists is not a heavy one," it does lie squarely "with the party seeking dismissal." <u>Del Monte Fresh Produce Co. v. Dole Food Co., Inc.</u>, 136 F. Supp. 2d 1271, 1276 (S.D. Fla. 2001)

(Gold, J.).  But, as noted above, in <u>Atlantic Marine</u> the Court specified that, when the parties have entered into a valid forum-selection clause, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  134 S.Ct. at 581.  In so doing, it specifically rejected the district court's finding in that case that the defendant bore the burden of showing that transfer would be appropriate.  <u>Id</u>. at 583.  Applying this to the <u>forum non conveniens</u> context, this court holds that, because the existence of a valid forum-selection clause governing these claims has been established, the burden now shifts to Espie to establish that dismissal is not warranted.

Washington National raised the issue of <u>forum non conveniens</u> for the first time in a footnote in its reply brief.  Espie, therefore, has not yet had an opportunity to respond.  As such, the court will treat the reply brief as a separate motion to dismiss, will allow Caine & Weiner an opportunity to join in the motion, and will

allow Espie an opportunity to respond.  However, Espie bears the burden of establishing that, given the applicability of the forum-selection clause, dismissal is not warranted.

***

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant Caine & Weiner, LLC's motion to dismiss or transfer venue (Doc. No. 22) is denied.

(2) Defendant Washington National Insurance Company's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or to transfer pursuant to 28 U.S.C. § 1404(a) (Doc. No. 20) is denied.

(3) Defendant Washington National's reply brief (Doc. No. 26) is treated as a separate motion to dismiss based on the doctrine of <u>forum non conveniens</u>.

(4) Defendant Washington National's motion to dismiss based on the doctrine of <u>forum non conveniens</u> (Doc. No.

34

26) is set for submission, without oral argument, on July 31, 2014.

(5) Defendant Caine & Weiner shall have until July 3, 2014, to join in defendant Washington National's motion to dismiss based on the doctrine of <u>forum non conveniens</u> (Doc. No. 26) if it desires to do so.

(6) Plaintiff Daniel Espie shall have until July 17, 2014, to file a response.

(7) The defendants shall have until July 31, 2014, to file a reply.

DONE, this the 27th day of June, 2014.

<u>    /s/ Myron H. Thompson    </u>
UNITED STATES DISTRICT JUDGE